# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAWN MUSE, | ) |
| Plaintiff, | ) )  ) |
| | ) 2:18-cv-301 |
| v. | ) ) |
| VA HOSPITAL ET AL, | ) ) |
| Defendant. | ) |

## OPINION

**Mark R. Hornak, United States District Judge**

Plaintiff Dawn Muse was shocked by an elevator call button while acting in her capacity as a Registered Nurse for the Department of Veterans Affairs. She submitted a claim for compensation, was paid, and now sues the VA and the elevator servicer for damages. The United States has filed a Motion to Dismiss for lack of subject matter jurisdiction. For the reasons that follow, the Court agrees that it lacks jurisdiction to entertain Plaintiff's claims. The Motion will be granted.

## I. BACKGROUND[1]

On August 5, 2015, Plaintiff Dawn Muse, a Registered Nurse for the Department of Veterans Affairs ("VA") in Pittsburgh, Pennsylvania, was jolted by an elevator call button at the VA building on University Drive. (Compl. ¶ 8.) She was acting in her capacity as a Registered Nurse for the VA when she attempted to summon the freight elevator on the third floor of the building "using the knuckle on the middle finger of her right hand." (*Id.* ¶ 9.) She saw a blue and orange spark originate from the button and was jolted back. (*Id.* ¶ 10.) Her right hand began to swell and turn red. (*Id.*) Two of the accompanying nurses came to her aid and reportedly felt a

---
[1] The Court draws the facts of the August 5, 2015 incident from Plaintiff's Complaint (ECF No. 1-1 ("Complaint")), and Federal Defendants' Appendix, (ECF No. 14).

shock upon touching Plaintiff. (*Id.* ¶ 11.) The elevator was installed and maintained by Schindler Pittsburgh. (*Id.* ¶ 9.)

On August 18, 2015, Plaintiff completed and submitted a United States Department of Labor "Federal Employee's Notice of Traumatic Injury and Claim for Continuation of Pay/Compensation" form. ((Decl. of Jennifer Valdivieso, ECF No. 14–1 ("Valdivieso Decl."), ¶¶ 4–5); Federal Employee's Notice of Traumatic Injury and Claim for Continuation of Pay/Compensation, ECF No. 14–2 ("ECF No. 14–2"), at 6–8.)) The Office of Worker's Compensation Programs ("OWCP") processed Plaintiff's claim according to its "short form closure procedures, meaning that OWCP handled, paid (medical payments only), and closed the claim without formal adjudication." (Valdivieso Decl. ¶ 6.) Plaintiff received $163.02 in payments from OWCP toward medical expenses. (U.S. Dep't of Labor Bill Pay History Report, ECF No. 14–2 ("Bill Pay History Report").) She did not claim any medical expenses over $1,500, or any disability benefits. (Memorandum from Jennifer Valdivieso to Rachel Dizard, Assistant United States Attorney, June 22, 2018, ECF No. 14–2 ("Valdivieso Mem."), at 6.)

Plaintiff did not submit an administrative claim under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) & §§ 2671–2680 ("FTCA"). (Decl. of Nancy O'Donnell, ECF No. 14–3 ("O'Donnell Decl."), at 3.)

Around February 8, 2018, Plaintiff brought this case in the Allegheny Court of Common Pleas at No. GD-17-010725 against VA Pittsburgh Healthcare System, VA Hospital, and the U.S. Department of Veterans Affairs (collectively, "Federal Defendants") and against Schindler Elevators & Escalators in Pittsburgh, Schindler Elevator Corporation, and Schindler Elevator Company (collectively, "Non-Federal Defendants"). (Compl. ¶¶ 1–4.) Plaintiff seeks damages against Federal and Non-Federal Defendants for her alleged injuries. On February 27, 2018, in

2

the Court of Common Pleas of Allegheny County, Non-Federal Defendants filed an Answer, New Matter, and Cross-Claim. (Answer, New Matter & Cr.-Cl., ECF No. 14–4 ("Non-Federal Defs.' Answer, New Matter & Cr.-Cl.").) The cross-claim denies any liability to Plaintiff and asserts sole and/or joint liability, as well as contribution and/or indemnity, against the Federal Defendants. (*Id.* at 17–18.) Federal Defendants filed a Notice of Removal under 28 U.S.C. §§ 1442 and 1446.

Federal Defendants then filed a Motion to Dismiss for Failure to State a Claim, or, in the alternative, Motion for Summary Judgment. (ECF No. 12.) Non-Federal Defendants filed a Response, (ECF No. 18), adopting Plaintiff's position in her Response, (ECF No. 15). The matter is now ripe for disposition.

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject matter jurisdiction over the plaintiff's claims. Fed. R. Civ. P. 12(b)(1). "At issue . . . is the court's 'very power to hear the case.'" *Judkins v. HT Window Fashions Corp.*, 514 F. Supp. 2d 753, 759 (W.D. Pa. 2007) (quoting *Mortensen v. First Fed. Savings & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). By contrast, a Rule 12(b)(6) motion "tests the legal sufficiency of plaintiff's claim. In other words . . . the question is whether the plaintiff would be able to prevail even if she were able to prove all of her allegations." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006). The party asserting jurisdiction (here, the Plaintiff) bears the burden of proving her claims are properly before the Court. *Dev't Fin. Corp. v. Alpha Housing & Health Care*, 54 F.3d 156, 158 (3d Cir. 1995).

In reviewing a Rule 12(b)(1) motion, the Court must determine whether the attack on its jurisdiction is facial or factual. *Petruska*, 462 F.3d at 302 n.3. A facial attack challenges the

3

Court's jurisdiction without disputing the averred facts in the complaint, and requires the Court to treat those averments as true. *Id.* A factual attack, however, contests the factual allegations underlying the assertion of jurisdiction, either through the filing of an answer or presenting competing facts. *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). When a factual challenge is made, the plaintiff's factual allegations receive no presumption of truthfulness. *Mortensen*, 549 F.2d at 891. "In reviewing a factual attack, the court may consider evidence outside the pleadings." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). In contrast to a 12(b)(6) motion, a Court considering a 12(b)(1) motion may review facts outside the complaint because a Federal Court must assure itself of its jurisdiction to hear the case. *Boyle v. Governor's Veterans Outreach & Assistance Ctr.*, 925 F.2d 71, 74 (1991).

Here, because Federal Defendants have included with their motion documents outside the pleadings, the Court will consider their motion as a factual attack on subject matter jurisdiction. *See Int'l Ass'n of Machinists & Aerospace Workers v. Nw. Airlines, Inc.*, 673 F.2d 700, 711 (3d Cir. 1982) ("[Defendant's] motion was supported by a sworn statement of facts. It therefore must be construed as a factual, rather than a facial attack on the court's subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)."). The Court may therefore "inquire by affidavits or otherwise, into the facts as they exist." *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947). Here, the Court has considered the submitted documentary evidence and affidavits without resorting to an evidentiary hearing. *See Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997).

### III. DISCUSSION

Plaintiff has brought claims for negligence, strict liability, failure to warn, breach of express and implied warranties, and vicarious liability against Non-Federal Defendants. (Compl. ¶¶ 20–63.) She also brought claims for negligence and vicarious liability against Federal

4

Defendants. (Compl. ¶¶ 64–82.) Federal Defendants raise four jurisdictional challenges to her claims and one challenge to the Non-Federal Defendants' cross claim. First, Federal Defendants contend that the Court lacks subject-matter jurisdiction under the Contract Disputes Act and the Doctrine of Derivative Jurisdiction. Second, they maintain that because the United States of America is not a named Federal Defendant, Plaintiff's FTCA claims should be dismissed. Third, they argue that Plaintiff failed to exhaust her mandatory administrative remedies under the FTCA in any event. And fourth, Federal Defendants argue that Plaintiff's claims are barred by the Federal Employees' Compensation Act ("FECA"). In response, Plaintiff asserts that this Court has proper jurisdiction over her claims. For their part, Non-Federal Defendants adopt Plaintiff's arguments. (*See* Response to Motion by Schindler Elevator Corp., ECF No. 18.). The Court will address the parties' arguments in turn.

### A. Plaintiff's Claims against the Federal Defendants

#### a. The Federal Employees Compensation Act

FECA is the exclusive workers' compensation plan for federal government employees. 5 U.S.C. § 8102(a). It provides:

> The United States shall pay compensation as specified by this subchapter for the disability or death of an employee resulting from personal injury sustained while in the performance of his duty, unless the injury or death is—
> (1) caused by willful misconduct of the employee;
> (2) caused by the employee's intention to bring about the injury or death of himself or of another; or
> (3) proximately caused by the intoxication of the injured employee.

*Id.* An employee receiving compensation under FECA for job-related injury or death cannot receive any other remedy against the United States. 5 U.S.C § 8116(c). "Where FECA applies, it unambiguously precludes 'all other liability of the United States' either 'under a workmen's

5

compensation statute or under a Federal tort liability statute.'" *DiPippa v. United States*, 687 F.2d 14, 17 (3d Cir. 1982) (quoting 5 U.S.C. § 8116(c)).

FECA precludes other remedies because Congress adopted the "principal compromise" of worker's compensation legislation, known as "quid pro quo": "employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the Government." *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 194 (1983). Congress designed FECA to protect the Government from suits under statutes—like the FTCA—that waive the Government's sovereign immunity. *Id.* at 193–94. Thus, FECA substitutes for, rather than supplementing, suits against the United States. *United States v. Demko*, 385 U.S. 149, 151 (1966).

The Secretary of Labor decides whether to award FECA benefits, and his or her decision is "final and conclusive for all purposes and with respect to all questions of law and fact; and is not subject to review by another official of the United States or by a court by mandamus or otherwise. 5 U.S.C. § 8128(b). If FECA covers a claim, this Court is without jurisdiction to review its merits, because the United States has not otherwise waived its sovereign immunity to suit. *Heilman v. United States*, 731 F.2d 1104, 1110 (3d Cir. 1984). Out of deference to the Secretary's authority, the Court will stay proceedings if there is a "substantial question" of FECA coverage. *Id.* "A substantial question exists unless it is 'certain that [the Secretary] would find no coverage.'" *Horton v. United States*, 144 F. App'x 931, 932 (3d Cir. 2005) (quoting *DiPippa*, 687 F.2d at 16). Where, however, it appears from the face of the complaint that the injuries occurred while the employee was performing duties on the United States' behalf, "then the district court has no choice but to dismiss the action." *Heilman*, 731 F.2d at 1111.

Therefore, to evaluate its jurisdiction, this Court must determine whether there is a "substantial question" (or certainty) of FECA's applicability to Plaintiff's claims. According to Plaintiff's Complaint, she seeks recovery for injuries allegedly sustained in connection with her employment as a VA nurse. (Compl. ¶ 8.) Therefore, from the face of the Complaint, FECA unquestionably applies, as she seeks recovery for "disability or death of an employee resulting from personal injury sustained while in the performance of [her] duty." 5 U.S.C. § 8102(a). It also bears noting, though it is not dispositive of FECA's coverage, that Plaintiff herself submitted a claim for FECA compensation, on which she checked "yes" in the box for the question "was employee injured in performance of duty?" (Exh. 1B, ECF No. 14–2, at 6.) She also received medical benefits for her claim. (Valdivieso Decl., ¶ 6; Exh. 1C, ECF No. 14–2, at 10.)

Plaintiff argues that she needs additional discovery related to the Agency's investigation and closing of her claim to determine whether she would receive FECA benefits. (ECF No. 16, at 13.) But whether Plaintiff is entitled to benefits, or is actually awarded them, does not dictate the jurisdictional result. Rather, the ultimate issue is whether there is a "substantial question" (or more) of coverage.[2] Plaintiff's theory does not confer jurisdiction on this Court.[3]

---

[2] Although this Court determines on the basis of Plaintiff's Complaint alone that FECA applies, the Court also concludes in the alternative that there is a substantial question of FECA coverage. The Government submitted an advisory opinion from Jennifer Valdivieso, the Deputy Director of Program System Integrity, Division of Federal Employees' Compensation, OWCP, as to whether the Federal Employees' Compensation Act applied to Plaintiff's injury. (Valdivieso Mem.) Valdivieso concluded that there is a "significant likelihood of FECA coverage and any injuries sustained by Ms. Muse as a result of the August 5, 2015 elevator incident may be covered by FECA." (*Id.* at 4.) Under these circumstances, it is unlikely that the Secretary of Labor would find *no* coverage, and therefore a "substantial question" exists. *See DiPippa*, 687 F.2d at 16.

[3] Federal Defendants also aver that they have not been properly served with either the Complaint or the Cross-claim asserted against them, and that the claims should be dismissed for this additional reason. *See* Fed. R. Civ. P. 12(b)(5) (insufficient service of process). A review of the docket indicates that Plaintiff and Non-Federal Defendants did not properly effect service upon Federal Defendants. *See* Fed. R. Civ. P. 4(a)(1)(F)–(G) & 4(b). Under Rule 12(b)(5), this Court has "broad discretion" in determining whether to dismiss a complaint for insufficient service. *Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir. 1992). "[D]ismissal of a complaint is inappropriate when there exists a reasonable prospect that service may yet be obtained." *Id.* Given this latitude, the Court chooses not to dismiss the

### b. The Federal Tort Claims Act

Federal Defendants also maintain that even if FECA did not apply, this Court lacks jurisdiction over Plaintiff's claims under the FTCA[4] and the doctrine of derivative jurisdiction. The FTCA creates a limited waiver of the United States' sovereign immunity for claims that its officers or employees acting within the scope of their employment were negligent. 28 U.S.C. § 1346(b). "Because the [FTCA] constitutes a waiver of sovereign immunity, the Act's established procedures have been strictly construed." *Livera v. First State Nat'l Bank of N.J.*, 879 F.2d 1186, 1194 (3d Cir. 1989).

#### i. Failure to Exhaust Administrative Claims

The FTCA requires claimants to present administrative torts to the appropriate administrative agency, and that the agency must finally deny any tort claim before a claimant may sue. 28 U.S.C. § 2675(a). The administrative exhaustion requirement "is unambiguous." *McNeil v. United States*, 508 U.S. 106, 111 (1993). The FTCA further provides that an FTCA action "shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency." 28 U.S.C. § 2675(b). These requirements are jurisdictional, and therefore cannot be waived. *White-Squire v. U.S. Postal Serv.*, 592 F.3d 453, 457 (3d Cir. 2010).

Plaintiff avers that she exhausted her administrative remedies because the agency investigated the incident and closed her case. (ECF No. 16, at 12.) However, Plaintiff has not averred, nor does the record reflect, that she submitted an FTCA claim to the VA. She alleges that "the Veterans Affairs Police, University Drive Division . . . documented an Investigative

---

Complaint or Cross-claim pursuant to Rule 12(b)(5), but instead will dismiss based on Federal Defendants' substantive arguments.

[4] In any tort case brought under the FTCA, the United States is the only proper party defendant, not the federal agency or an individual federal employee. *See* 28 U.S.C. § 2674, 2679(a), (b)(1). But Plaintiff did not sue the United States as a named defendant at all. Federal Defendants urge dismissal on this basis, but the Court will decline to remedy Plaintiff's pleading defect by dismissing her case on this basis alone. Rather, the Court will dismiss because FECA provides Plaintiff's remedy.

Report," (Compl. ¶ 14), and that "[t]he Veterans Health Administration also documented this incident via an Incident Report," (Compl ¶ 14). And Federal Defendants have put forward evidence that Plaintiff did not present an FTCA claim to the VA before suing. (*See* O'Donnell Decl., ECF No. 14-3 (concluding, following a search of claim records, that "[n]o FTCA claim was presented to VA by plaintiff Dawn Muse arising out of the incident described in the complaint").) Plaintiff's statement "that an investigation report was comprised related to Plaintiff's incident," (ECF No. 16, at 12), does not suffice to satisfy the requirement that she present a timely FTCA claim to the VA. Therefore, even if FECA did not apply, this Court would lack subject matter jurisdiction to hear Plaintiff's claims.

### ii. The Doctrine of Derivative Jurisdiction

Federal Defendants removed Plaintiff's action pursuant to 28 U.S.C. § 1442. (Notice of Removal, ECF No. 1, ¶ 1.) They contend that because the FTCA grants "exclusive jurisdiction of civil actions on claims against the United States, for money damages," 28 U.S.C. § 1346(b)(1), Plaintiff's act of filing her claims in the Court of Common Pleas for Allegheny County wipes out the Court's jurisdiction in this case, even if filing her claims in federal court in the first instance would have rendered them properly before this Court.

According to the doctrine of derivative jurisdiction, a federal court lacks subject matter jurisdiction in an otherwise procedurally proper removal case when the state court in which the suit was originally filed was without subject matter jurisdiction. *Lambert Run Coal Co. v. Balt. & Ohio R.R. Co.*, 258 U.S. 377, 382 (1922). As the theory goes, the federal court "derives" its jurisdiction from the state court. *Smith v. Cromer*, 159 F.3d 875, 879 (4th Cir. 1998). Put differently, if the state court had no subject matter jurisdiction, neither does the Federal Court upon removal.

The continued vitality of the derivative jurisdiction doctrine is in dispute. At first blush, it seems perplexing that a party may remove a case to federal court, only to successfully assert that that court has no jurisdiction because the state court from whence the case was removed had no jurisdiction. Moreover, as Plaintiff points out, this doctrine has been abolished as regards cases removed under the general removal statute. *See* 28 U.S.C. § 1441(f) ("The court to which a civil action is removed under this section is not precluded from hearing and determining any claim in such civil action because the State court from which such civil action is removed did not have jurisdiction over that claim."). Federal Defendants counter that they removed this case under § 1442(a), and a number of courts have applied the doctrine of derivative jurisdiction to dismiss cases removed under 28 U.S.C. § 1442(a). *See, e.g., Bullock v. Napolitano*, 666 F.3d 281, 206 (4th Cir. 2012); *Jiron v. Christus St. Vincent Regional Med. Ctr.*, 960 F. Supp. 2d 1147 (D.N.M. 2012); *Scoratow v. Smith*, No. 08-cv-1576, 2009 WL 890575, at *3 (W.D. Pa. 2009). *See also* 14C Wright & Miller § 3721 ("[F]or no apparent policy reason, the current Section [1441] limits the abrogation of the derivative-jurisdiction doctrine to cases removed under Section 1441.") A panel of the Third Circuit has also stated that "the doctrine arguably still applies to removals, as in this case, pertaining to federal officers, 28 U.S.C. § 1442." *Calhoun v. Murray*, 507 F. App'x 251, 256 (3d Cir. 2012).

Some courts, however, have read Congress's amendment of § 1441(e) to support the complete abandonment of the derivative jurisdiction doctrine. *See, e.g., North Dakota v. Fredericks*, 940 F.2d 333, 337 (8th Cir. 1991) ("The derivative-jurisdiction doctrine owes its origin to nothing whatever in the removal statutes themselves, but rather to the formalistic conception, entirely divorced from reality, that a case originally filed in a court without jurisdiction is doomed to be a nullity forever, even after transfer to a completely different

forum."). *See also Rodas v. Seidlin*, 656 F.3d 610, 622–23 (7th Cir. 2011) (characterizing derivative jurisdiction as a "procedural defect rather than a subject matter ingredient" and stating that "subject matter jurisdiction is unyielding [and] can never be waived . . . the earliest cases confirm that the doctrine of derivative jurisdiction does not. . . . it is not a matter of subject matter jurisdiction." (citations omitted)).

The Court need not decide whether the derivative jurisdiction doctrine divests it of jurisdiction over Plaintiff's claims, because even if Plaintiff had originally filed her case in federal, rather than state, court, it would have been dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction because Plaintiff's exclusive remedy is the FECA.

### B. Non-Federal Defendants' Cross-Claim

Non-Federal Defendants filed an Answer, New Matter, and Cross Claim in the Allegheny Court of Common Pleas. (Answer, New Matter, and Cross Claim, ECF No. 14–4.) There, Non-Federal Defendants averred that, to the extent Plaintiff has suffered the alleged injuries, they are the sole result of Federal Defendants' conduct and that Federal Defendants should be held solely or jointly liable to Plaintiff. (*Id.* at 17.) In the alternative, Non-Federal Defendants seek contribution and indemnity from Federal Defendants. (*Id.*)

The Contract Disputes Act of 1978 ("CDA") provides for resolution of procurement disputes. 41 U.S.C. § 7101–09. The CDA addresses the Federal Government's procurement of property and services. *Id.* § 7102(a). It reserves jurisdiction over such disputes to the United States Court of Federal Claims and the boards of contract appeals, with the exception of actions against the Tennessee Valley Authority. *Id.* § 7104. An aggrieved party must initiate a contract dispute by filing a certified claim to the contracting officer, *id.* § 7103(a), and may appeal to either the agency's board of contract appeals or the Court of Federal Claims, *id.* § 7104. "The

11

contracting officer's decision on a claim is final and conclusive and is not subject to review by any forum, tribunal, or Federal Government agency, unless an appeal or action is timely commenced as authorized by this chapter." *Id.* § 7103(g).

Thus, a Federal District Court in the first instance lacks jurisdiction over claims between the Government and contractors that are subject to the CDA. *See United States v. Kasler Elec. Co.*, 123 F.3d 341, 346 (6th Cir. 1997) (stating that the CDA "is intended to keep government contract disputes out of district courts; it limits review of the merits of government contract disputes to certain forums, both to limit the waiver of sovereign immunity and to submit government contract issues to forums that have specialized knowledge and experience").

Here, the Contract between the VA and the Non-Federal Defendants states that "[t]his contract is subject to the Contract Disputes Act of 1978." (Contract, Exhibit 4A, ECF No. 14–6 ("Contract"), at 11.) Plaintiff argues that the CDA does not, by its terms, apply to every government contract. *See* 41 U.S.C. § 7102(a). And, Plaintiff says, the language in the Contract only refers to payment disputes and other disagreements, not whether the Non-Federal Defendants can assert a counterclaim against the VA. (ECF No. 16, at 9.) The Court identifies no such limitation in the Contract. The plain language of the Contract states that it is subject to the CDA.

Therefore, this Court lacks jurisdiction over disputes between VA and its contractors, Non-Federal Defendants. Non-Federal Defendants' cross-claim will be dismissed. Non-Federal Defendants must instead bring their cross-claim against the United States in either the Agency Board of Contract Appeals or the United States Court of Federal Claims.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that the Motion to Dismiss filed by Federal Defendants (ECF No. 12) is GRANTED. Plaintiff's Complaint (Exh. 1, ECF No. 1) will be dismissed with respect to Federal Defendants, and Non-Defendants' cross-claim against Federal Defendants will be dismissed. The remainder of this matter will be remanded forthwith to the Court of Common Pleas of Allegheny County.

An appropriate Order will issue.

Mark R. Hornak
United States District Judge

Dated: December 17, 2018
cc: All counsel of record